[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 19, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15184
Non-Argument Calendar
_____

BIA No. A96-008-280

NAZMUL HAQUE TALUKDER,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(June 19, 2007)**

Before BIRCH, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Nazmul Haque Talukder, a native and citizen of Bangladesh, petitions this

court for review of the Board of Immigration Appeals' ("BIA") affirmance of the

Immigration Judge's ("IJ") order of removal and denial of withholding of removal

and relief under the United Nations Convention Against Torture ("CAT"). After a

thorough review of the record, we deny the petition.

## I. Background

After remaining in the United States following the expiration of his visa,

Talukder received a notice to appear charging him with removability. He applied

for asylum, withholding of removal, and relief under the CAT, alleging that he had

been persecuted in Bangladesh based on his religion and political membership in

the Aswami League and that the Bangladesh government engaged in a pattern and

practice of persecution.[1]

Talukder began his membership in the Aswami League in 1979 or 1980

when he was in the tenth grade. He worked as a member, organizing things. When

he went to college, his role in the Aswami League did not change at first, but he

then began organizing and delivering speeches and he was chosen by a committee

to be one of five vice presidents of the League. This role required "more advanced

work;" he would talk to recruits at the college about the Aswami League and

---

[1] The IJ determined that the asylum application was untimely. Talukder does not challenge this finding on appeal. Thus, it is deemed abandoned. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005). Moreover, although he alleged religion as a basis for relief in his asylum application, he did not raise it in his testimony before the IJ, nor did he address it before the BIA. Additionally, he does not argue in his petition that he was persecuted on account of his religion. Thus, the evidence presented regarding religious extremists is not relevant to his claims of persecution.

suggest that they tell their families the League was "good." He also organized meetings with students. Talukder continued in this role throughout college and while in graduate school. In 1984, he was acting president for three months.

After he graduated in 1987, Talukder operated a store that sold computer parts. It is unclear whether he continued to be involved in the League. Following the elections in 2001, Aswami League members began to experience problems from members of the Bangladesh Nationalists Party ("BNP"), who threatened and killed Aswami leaders. Talukder believed that BNP members wanted to kill him.

On November 15, 2001, six or seven BNP members came looking for Talukder at his store and his home, demanding money. They broke furniture in the house and threatened Talukder. Although Talukder refused to turn over any money, nothing happened to him or his wife and the men did not return. Talukder and his family did, however, receive some threatening calls. In February 2002, Talukder left Bangladesh for the United States because he would not be able to relocate in Bangladesh. The other members of his family moved to "the villages." Talukder believed he would be threatened and killed if he returned due to his "high position in the party" and his refusal to give money.

During his testimony at the removal hearing, Talukder was unable to remember his wife's birthday or the date on which he divorced his first wife. He admitted that his asylum application did not mention the November incident, but

3

he explained that he had included it in the attached statement. He also denied that he had requested authorization to travel to Bangladesh, but then admitted that he had requested permission after the government submitted the signed request form. According to the application, Talukder sought to return to Bangladesh to tend to some personal business and to see his family whom he had not seen in some time. In his testimony, however, Talukder explained that he wanted to visit because his father was ill, but that he did not take the trip.

The record also includes numerous articles and documents confirming the violence and civil unrest in Bangladesh during the election process, the extortion of money from shopkeepers, and the use of torture and violence. The 2003 and 2004 State Department Country Reports acknowledged the violence against many Aswami League members and leaders who faced arrest, torture, and death.

The IJ denied relief, finding that Talukder was not credible, as his testimony had been vague and non-specific, he was unable to remember details of his divorce, and he gave limited detail on his role in the Aswami League.[2] Nevertheless, the IJ concluded that, even if Talukder was credible, he had not established eligibility for withholding of removal or relief under the CAT.

---

[2] The IJ thus made an explicit adverse credibility finding. See Niftaliev v. U.S. Att'y Gen., No. 06-12708, manuscript op. at 11 (11th Cir. May 25, 2007); Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005).

The BIA affirmed the IJ's decision and found that, even if Talukder was credible, he had not met his burden. Talukder now petitions this court for review.

## II. Discussion

Where the BIA adopts the IJ's decision, we review the IJ's decision as adopted by the BIA. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1235-36 (11th Cir. 2006); Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005). To the extent that the IJ's decision was based on a legal determination, we review the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006); D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The IJ's factual determinations are reviewed under the substantial evidence test, and this court "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation and internal marks omitted). Additionally, "[u]nder the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255 (citing Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc)). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (quotation omitted).

5

A. Withholding of Relief

Talukder argues that his testimony was credible, the IJ improperly ignored all his documentary evidence, and he established a pattern and practice of persecution.

The Attorney General must grant withholding of removal if the alien can show that his 'life or freedom would be threatened in [that] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion.'" Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005) (quoting 8 U.S.C. § 1231(b)(3)(A) (alteration omitted)). The burden of proof is upon the alien to show either that he suffered past persecution, or that it is "more likely than not [he] will be persecuted or tortured upon being returned to [his] country." Id. (quotation omitted).[3]

An applicant for withholding of removal may satisfy this burden of proof by showing (a) "past persecution in [his] country based on a protected ground," id. (quotation omitted), (b) 'that it is more likely than not that [he] would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country,'" id. (quoting 8 C.F.R. § 208.16(b)(2), or (c) a pattern or practice of persecution of a group

_____

[3] The more-likely-than-not standard is more stringent than the well-founded fear standard in asylum cases. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006).

6

similarly situated to him in which he is included or with which he is identified, 8 C.F.R. § 208.16(b)(2)(i), (ii).

If an alien's testimony is credible, it may be sufficient, without corroboration, to satisfy his burden of proof in establishing his eligibility for relief from removal. 8 C.F.R. §§ 208.13(a), 208.16(b); Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. (internal citation omitted). However, an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by the asylum applicant. D-Muhumed, 388 F.3d at 818. Chen v. U.S. Att'y Gen, 463 F.3d 1228, 1231 (11th Cir. 2006); Forgue, 401 F.3d at 1287. Indications of reliable testimony include consistency on direct examination, consistency with the written asylum application, and the absence of embellishments.[4] See In re B-, 21 I & N Dec. 66, 70 (BIA 1995).

---

[4] Although the REAL ID Act changed the credibility standard for applications made on or after May 11, 2005, this change is not applicable to Talukder because his application was filed in 2004. Moreover, although this court has not directly addressed whether the inconsistency must go to the heart of the claim for those applications filed before the REAL ID Act, the standard is not relevant in this case because both the IJ and the BIA concluded that, even if the testimony was credible, Talukder had not met his burden to establish eligibility for relief.

7

We conclude that the IJ and BIA's adverse credibility finding is supported by substantial evidence. Talukder's testimony was vague and non-specific, and at times untruthful. For example, Talukder denied that he requested permission to travel to Bangladesh, but when confronted with the application, he admitted that he had filed it. Moreover, he stated he had a "high position" in the party, but testified that after his graduation, he had only been a member of the party and had not been active. In light of the inconsistencies, untruthful testimony, and vague assertions, the adverse credibility determination is supported by the record.

Nevertheless, even if we were to conclude that Talukder was credible, he still would not be entitled to relief. The single incident Talukder identified as persecution fail to rise to the level of persecution as defined by this court. See Sepulveda, 401 F.3d at 1231 (defining persecution as "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." (internal quotations omitted)). Even considering the cumulative effects of the incident and the calls, Talukder still has not met his burden.[5] See Ruiz v. U.S. Att'y Gen., 479 F.3d 762 (11th Cir. 2007).

_____

[5] Nor did Talukder establish that it is more likely than not that he would be persecuted on account of his political opinion if he returned to Bangladesh. Since Talukder completed graduate school in 1987, he has been only a member of the party, he has not been active, and he has not held any other leadership positions. Notably, Talukder's family continues to live in Bangladesh without incident despite the fact that his father and siblings were also members of the Aswami League.

Moreover, Talukder has not shown that the alleged persecution was on account of his political opinion. In similar cases from Colombia, this court has held that the refusal to pay a war tax did not constitute persecution on account of a political opinion. Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004); see also Rivera v. U.S. Att'y Gen., No. 06-10209, manuscript op. at 12-13 (11th Cir. May 23, 2007).

Finally, Talukder's claim of a pattern and practice of persecution is without merit. Although there has been violence against the Aswami League, it has been directed at leaders within the group. Talukder's own testimony established that he has not been an active member since his graduation in 1987. There is no evidence that similarly situated party members have experienced threats or harm. At most, the evidence suggests that there is widespread extortion of shop owners, but nothing connects the threats to a protected ground.

We note that the record demonstrated that the IJ considered all evidence. The fact that the IJ did not refer to the evidence does not demonstrate that he did not consider it given the fact that the IJ made detailed factual findings to support his decision. Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006).

B. CAT Relief

Talukder argues that the IJ and BIA erred by concluding that he had not established eligibility for CAT relief and by failing to make specific findings about CAT eligibility.

To show entitlement to relief under the CAT, an applicant must establish that it is "more likely than not that he would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).  As discussed above, there was no evidence of past persecution and no reason that it was more likely than not that Talukder would face persecution if returned.  In light of these findings, Talukder cannot show that it is more likely that he will face torture if returned to Bangladesh.

### III. Conclusion

For the foregoing reasons, we **DENY** the petition.